[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 14, 2007
THOMAS K. KAHN
CLERK

No. 07-11813
Non-Argument Calendar

_____

D. C. Docket No. 05-01601-CV-ORL-KRS

BARBARA J. BARRINGTON,

Plaintiff-Appellant,

versus

LOCKHEED MARTIN,
U.A.W. LOCAL 788, International Union
of Automobile, Aerospace-Agricultural
Implement Workers of America,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 14, 2007)

Before ANDERSON, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Barbara Barrington, proceeding pro se, appeals the district court's grant of summary judgment in favor of Lockheed Martin ("Lockheed") and the International Union of Automobile, Aerospace Workers of America Local Union 788 ("the Union"). After a thorough review of the record, we conclude that the district court properly granted summary judgment because Barrington failed to provide any evidence that the Union breached its duty of fair representation. Accordingly, we affirm.

I. Background

Barrington was terminated from her employment with Lockheed after she cut co-worker Rickey Wilson's hair without permission. Although Wilson was not upset, he filed a complaint with Lockheed, which he later sought to rescind. Thereafter, Barrington and two female co-workers engaged in a confrontation in the restroom, apparently because Barrington believed that these women had bullied Wilson into filing the complaint in an effort to have her fired. Based on this incident, Barrington filed defamation suits in state court against the two co-workers, although she later voluntarily dismissed the cases. Lockheed then terminated Barrington's employment on the grounds that her conduct violated workplace rules against violent behavior, inappropriate contact, and horseplay. Barrington proceeded through the Union's grievance process under the collective

bargaining agreement ("CBA"), challenging her termination and defending her interaction with Wilson. At the first arbitration hearing, Barrington did not testify or present any witnesses on the advice of her Union representative, Michael Barnette. Barnette had determined that Lockheed had not met its burden to show cause for Barrington's termination, and that presenting evidence or allowing Barrington to testify would open the door to issues likely to place Barrington in a bad light. Unhappy with Barnette's advice, Barrington requested a continuance and notified the Union and the arbitrator that she wished to testify. The arbitrator re-opened the proceedings to permit Barrington to testify and present other witnesses. During the proceedings, Barrington believed that Barnette was angry with her and that the arbitrator had become biased against her, and requested that both Barnette and the arbitrator be replaced. The Union declined to do so. Although the arbitrator found that the hair-cutting incident did not provide just cause for termination, the arbitrator ultimately upheld the termination given Barrington's other misconduct of filing frivolous lawsuits. The Union did not appeal. Barrington then filed the instant motion to vacate an arbitration award, pursuant to § 301 of the Labor Relations Management Act ("LMRA"), 29 U.S.C. § 185, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, on the grounds that the arbitrator exceeded his powers and engaged in fraud, and that the Union

3

breached its duty of fair representation.

The court granted summary judgment in favor of Lockheed and the Union, finding that the Union had not breached its duty of fair representation, as its actions were supported by rational explanations, were not discriminatory, and there was no evidence the Union acted in bad faith, and that Barrington could not establish a claim under § 301 of the LMRA if she could not show any breach.[1] Barrington now appeals.

II. Analysis[2]

Barrington identifies the following instances in which the Union breached

---

[1] The district court also concluded that Barrington's failure to exhaust administrative remedies should be excused. Although the Union challenges this finding, it did not file a cross-appeal. Therefore, we lack jurisdiction to address this issue. Sizzler Family Steak Houses v. Western Sizzlin Steak House, 793 F.2d 1529, 1541 (11th Cir. 1986); see also Fed. R. App. P. 4(a)(3).

[2] Barrington seeks relief under both § 301 of the LMRA and the FAA. This circuit has not determined whether the FAA applies to issues arising under CBA's. And we need not reach this issue in this case because, even if the FAA applied, Barrington has not shown that the arbitrator's award was "procured by corruption, fraud, or undue means," that there was "evident partiality or corruption in the arbitrators," or that the "arbitrators exceeded their powers." 9 U.S.C. § 10(a); B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 909-10 & n.2 (11th Cir. 2006). Nor has she established that the "the award was arbitrary and capricious." B.L. Harbert Int'l, LLC, 441 F.3d at 910 (internal citations omitted). In her own testimony, Barrington admitted that she had no evidence that the arbitrator committed fraud or was biased against her. She simply believed that this was the case. Moreover, there is no evidence that the arbitrator exceeded his powers in reaching his decision. Essentially, Barrington misunderstands the arbitrator's role and what evidence he may properly consider. The fact that Barrington did not include the incidents with other co-workers in her grievances did not prevent the arbitrator from considering such conduct when it was presented as evidence in Barrington's own testimony at the hearing. Therefore, summary judgment was proper on this claim.

its duty of fair representation: (1) she was not permitted to testify or call her own witnesses at the first arbitration hearing; (2) the Union representative engaged in ex parte communications with the arbitrator; (3) the Union representative refused to consider issues she wanted included in the appellate brief; (4) the Union refused to replace the arbitrator upon her request; and (5) the Union refused to appeal the arbitrator's award. She further contends that the arbitrator was biased, engaged in fraud, and exceeded his authority by considering evidence not properly before him.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Skrtich v. Thorton, 280 F.3d 1295, 1299 (11th Cir. 2002). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).

We have jurisdiction to review decisions of labor arbitrators under § 301 of the LMRA, which permits individual employees to seek review of decisions related to, inter alia, wrongful discharge. See Major League Baseball Players

5

Ass'n v. Garvey, 532 U.S. 504, 509, 121 S.Ct. 1724, 1728 (2001); Darden v. United States Steel Corp., 830 F.2d 1116, 1119 (11th Cir. 1987).

"[R]eview of a labor arbitration award is limited to a determination of whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority." Osram Sylvania, Inc. v. Teamsters Local Union 528, 87 F.3d 1261, 1263 (11th Cir. 1996) (quotation marks omitted). Nevertheless, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id. (quoting United Paperworkers v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 371 (1987)). "It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." Garvey, 532 U.S. at 509 (internal quotation marks and alteration omitted).

To succeed on a § 301 claim, Barrington must show that the Union breached its duty of fair representation. This issue presents a question of law that we review de novo. Bianchi v. Roadway Express, Inc., 441 F.3d 1278, 1282 (11th Cir.), cert. denied, 127 S.Ct. 397 (2006).

A labor union has a statutory duty of fair representation "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 910 (1967). If the union representing the employee "acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation," an employee may sue both the employer and the union, regardless of the outcome or finality of the grievance or arbitration proceeding. DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290 (1983). Such a suit consists of two causes of action: one against the employer under § 301 for breach of the CBA, and the other against the union for breach of the union's duty of fair representation. Id. Thus, to prevail, a plaintiff must demonstrate both that the CBA was breached and that the union breached its duty of fair representation. DelCostello, 462 U.S. at 165; Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570, 96 S.Ct. 1048, 1059 (1976)

A union breaches its duty of fair representation only if its actions toward a member are "arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. 190. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range

of reasonableness' as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67, 111 S.Ct. 1127, 1130 (1991) (internal citation omitted). Nevertheless, "[a] union's broad discretion in prosecuting grievance complaints includes not only the right to settle the dispute short of arbitration but also to refuse to initiate the first steps in the appeal procedure when it believes the grievance to be without merit." See Turner v. Air Transport Dispatchers' Ass'n, 468 F.2d 297, 300 (5th Cir. 1972).[3]

Here, the district court properly granted summary judgment because there was no evidence that the Union breached its duty by acting arbitrarily or in bad faith.[4] According to the records, Barnette's decisions were supported by reasonable strategy. Barnette explained that he did not want Barrington to testify because Lockheed had not met its burden to establish cause for Barrington's termination, and Barrington's testimony would only open the door to other issues. Barrington was able to testify and present her witnesses at the re-opening of the proceedings. And as the arbitrator explained, his decision to uphold the termination was not based on the hair-cutting incident, but rather resulted from

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this court held that all decisions handed down by the old Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

[4] Barrington does not argue, and there is no evidence to support a claim that the Union acted in a discriminatory fashion.

Barrington's own testimony that she engaged in other misconduct that would justify termination.

Moreover, a review of the record established that Barnette incorporated Barrington's issues into his appellate brief. Furthermore, according to the evidence, the Union's own policy was not to appeal arbitration awards. There was nothing arbitrary or discriminatory about its refusal to do so in Barrington's case.

Because Barrington cannot establish a breach by the Union, she cannot succeed on her § 301 claim, and we need not consider whether Lockheed breached the CBA, or whether the arbitration award should have been vacated. Accordingly, we AFFIRM.